**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

JESSIE J. BARNES,

                                        Plaintiff,

        v.                                                      No. 11-CV-857
                                                                   (TJM/CFH)

ALBERT PRACK, Director, Special Housing Units,
State of New York Department of Correctional Services,
DAVID A. ROCK, Superintendent, Upstate Correctional
Facility; D. UHLER, Deputy Superintendent of Security,
Upstate Correctional Facility; C. STICKNEY, Education
Department Supervisor, Upstate Correctional Facility; R.
CARON, Electronics Mechanic, Upstate Correctional
Facility; M. YADDOW, Sergeant, Upstate Correctional
Facility; R. LORDI, Registered Nurse, Upstate Correctional
Facility; GOKEY, Sergeant, Upstate Correctional Facility; B.
DEROUCHE, Correction Officer, Upstate Correctional Facility;
T. BOWMAN, Correctional Officer, Upstate Correctional
Facility; R. WINSTON, Correction Officer, Upstate Correctional
Facility; K. ST. MARY, Correction Officer, Upstate Correctional
Facility; BRIAN FISCHER, Commissioner of DOCS; P. COOK,
Correction Officer, Upstate Correctional Facility,

                                        Defendants,
_____

**APPEARANCES:**                              **OF COUNSEL:**

JESSIE J. BARNES
Plaintiff Pro Se
09-B-2707
Upstate Correctional Facility
Post Office Box 2000
Bare Hill Road
Malone, New York 12953

HON. ERIC T. SCHNEIDERMAN          GREGORY J. RODRIGUEZ, ESQ.
Attorney General for the                    Assistant Attorney General
   State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**CHRISTIAN F HUMMEL**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER[1]

Plaintiff pro se Jesse J. Barnes ("Barnes"), an inmate in the custody of the New York State Department of Correctional and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, the DOCCS Commissioner and Superintendent, and thirteen DOCCS employees, violated his constitutional rights under the First, Eighth, and Fourteenth Amendments.  Compl. (Dkt. No. 1).  Presently pending are selected defendants' motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6).  Dkt. Nos. 28, 35.[2]  Also pending is Barnes' motion to file an amended complaint pursuant to Fed. R. Civ. P. 15(a).  Dkt. No. 37.  All motions are opposed.  Dkt. Nos. 38-40.  For the following reasons it is recommended that defendants' motions be granted in part and denied in part.  Additionally, it is ordered that Barnes' motion to amend be granted in part and denied in part.

## I. Background

Barnes asserts general complaints of "tumultuous[] repeated[] abuse[] on a daily basis by the same group of corrections officers and sergeants."  Compl. (Dkt. No. 1) ¶ 16. Despite filing over sixty-five grievances and sixteen lawsuits related to his housing conditions, Barnes contends that defendants Rock and Uhler refused to move him to a

---

[1]This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

[2] The first motion is made on behalf of defendants Rock, Uhler, Stickney, Caron, Mattoon, Yaddow, Lordi and Commissioner Fischer.  Dkt. No. 28 at 1.  The second is made on behalf of defendant Prack.  Dkt. No. 35 at 1.  Accordingly, no motion has been made on behalf of defendants Derouche, Bowman, Winston, St. Mary, and Cook regarding the alleged excessive force and failure to protect claims.

different building in an effort to cease the staff abuse.  Compl.  ¶¶ 17-18, 30.  Barnes

specifically states that he "verbally spoke to defendant Rock with regard to the on-going

repeated . . . acts of abuse . . . ." but that Rock refused to believe the correctional staff

would act in such a manner.  Compl. ¶¶ 33, 35.  Barnes also alleges that Commissioner

Fischer was arbitrary, malicious, and negligent in his management and failed to properly

train and supervise subordinates.  Compl. ¶ 38.  Barnes indicates that he submitted

complaints and appeals to Fischer, and they were summarily returned with the same bias,

partial investigations, and ultimate conclusion that no misconduct had occurred.  Compl. ¶

39.  This resulted in an ongoing failure of all supervisory defendants to protect Barnes from

the abuse he was suffering from the other defendants' behaviors.  Compl. ¶¶ 30, 36, 37, 40.


## A.  Eighth Amendment

### 1.  Use of Force

On October 9, 2010, Barnes left his cell to report to the barber for a hair cut.[3]  Dkt. No. 1-

1 at 11; Compl. ¶ 19.  Barnes contends that the handcuffs were applied too tightly during

the escort, though he failed to identify who applied the restraints.  Compl.  ¶ 19.  Barnes

contends that the barber was verbally harassing him and that defendants Derouche and

Cook were laughing and looking on.  Compl. ¶¶ 20-21; Dkt. No. 1-1 at 26.  Defendant

Derouche and Bowman reported that Barnes leapt out of the barber's chair, towards the

---

[3] It appears that Barnes has mistakenly misdated the date of this occurrence in his
complaint as, when evaluating the claims in lieu of the additional evidence provided, it
appears that the haircut and use of force all occurred on the same day.  Compare Compl.
¶¶ 19-22 (stating that the hair cut occurred on October 10, 2010, the day after the alleged
use of force) with Dkt. No. 1-1 at 11 (misbehavior report stating that incident at the barber
was the precipitating incident for the use of force).

barber, in an aggressive manner.  Dkt. No. 1-1 at 11, 27-28.

Defendants Derouche and Bowman then escorted Barnes to the lower holding pen.  Dkt. No. 1-1 at 11, 27-28.  Derouche and Bowman contend that Barnes was belligerent, making threatening statements, and refusing medical treatment.  Dkt. No. 1-1 at 11, 27-28. Conversely, Barnes contends that Derouche and Bowman were "screaming derogator[y] remarks . . . [and] maliciously and sadistically slamming [Barnes'] face against [the] gate and striking him in his rib cage and back . . . ."  Compl. ¶ 23. During the escort to the holding pen and his cell, Barnes contends that Derouche was using the restraints as a weapon. Compl.  ¶¶ 24, 26.

Once they arrived back at Barnes' cell, a retention strap was placed on Barnes and defendants contend that once Bowman removed the restraints from one of Barnes' hands, he attempted to pull his hands into his cell and turn towards the defendants.  Dkt. No. 1-1 at 11, 27-30.  Derouche pulled on the retention strap while Barnes continued to struggle, Winston used his left hand to steady Barnes' right forearm, and St. Mary used both of his hands to immobilized Barnes' right arm so that Bowman could successfully release Barnes' right hand from the cuffs and recover the restraints.  Dkt. No. 1-1 at 11, 27-30.  Barnes' contends that these defendants used excessive force in pulling the retention strap resulting in nerve damage to both of his hands.  Compl. ¶¶ 27.  Throughout this incident, Barnes also asserted that defendant Gokey "continued to arbitrarily urge and promote progressive stages of malicious and sinister degenerative acts of abuses."  Compl. ¶¶ 25, 28. Additionally, defendant Cook "failed to intervene, prevent or otherwise deter the malicious and sadistic violation of [his] Eighth Amend[ment rights] . . . ."  Compl. ¶ 26.

Barnes attended a disciplinary hearing subsequent to these events, presided over by

4

third party hearing officer Lira, whereupon he was given five months of segregated housing,

five months loss of privileges, and five months loss of good time credits.  Dkt. No. 1-1 at 12.

Based upon his actions, it seems Barnes was also ejected from that disciplinary hearing as

well.  Dkt. No. 1-1 at 13.  Barnes appealed the disposition, citing inadequate employee

assistance, retaliation, harassment, conspiracy, and various due process violations.  Dkt.

No. 1-1 at 16-21.  Barnes also authored a grievance in connection with the alleged assault,

as well as the inadequate disciplinary hearing.  Dkt. No. 1-1 at 47-51, 56-60.


### 2.  Medical Indifference

Barnes stated that defendant nurse Lordi was deliberately indifferent to his medical

needs and falsified his medical records.  Compl. ¶ 41.  Barnes failed to state any additional

facts about his condition or the time period in which this deliberate indifferent allegedly

occurred.


### B.  Videotape Distortion

Barnes contends that defendants Caron and Mattoon participated "in skillful[] destruction

conspiracy of all surveillance videotape evidence that depict defendants misconduct on

Oct[ober] 9, 2010 with distortion . . . camera angles, splicing and distancing deliberately

willfully and . . . in bad faith to destroy critical surveillance evidence."  Compl. ¶ 47.  Barnes

also filed a grievance about the quality of the video tapes from the surveillance which was

denied by CORC stating that the "footage is preserved and provided . . . [and t]here is no

requirement that additional footage, before and after the incident, be provided."  Dkt. No. 1-

1 at 34.

### C.  False Misbehavior Report & Unconstitutional Disciplinary Hearing

On April 23, 2011, defendant Yaddow witnessed Barnes standing on a stool in his cell and repeatedly flushing his toilet which caused his cell to flood.  Dkt. No. 1-1 at 42.  Yaddow issued a direct order for Barnes to cease flushing his toilet, but Barnes refused.  Id.  Barnes asserts that this misbehavior report was false and filed in retaliation for a prior grievance Barnes had previously filed against Yaddow.  Compl. ¶ 42.

On May 6, 2011, defendant Stickney acted as a hearing officer at the subsequent disciplinary hearing.  Compl. ¶ 43; Dkt. No. 1-1 at 43-44.  Barnes contends that Stickley "ejected [him] from [the] hearing without justification . . . depriving him of any meaningful due process . . . to be present or present a defense . . . to be heard by a fair and impartial hearing officer . . . to call witnesses . . . [or] to present documentary evidence in his defense . . . ."  Compl. ¶ 43.  Stickney's bias resulted in a disciplinary disposition adverse to Barnes' interests, specifically recommending a punishment of seven days on a restricted diet.  Compl. ¶ 44.  Notes from the disposition indicate that Stickney relied upon both the misbehavior report and video evidence of the event.  Dkt. No. 1-1 at 44.  Barnes contends the restricted diet cause him to lose substantial weight, as well as suffer pain, anxiety, and mental anguish.  Compl. ¶ 45.

On June 20, 2011, Barnes received a notification from defendant Prack that the disposition from the disciplinary hearing had been reviewed and affirmed.  Dkt. No. 1-1 at 46; Dkt. No. 1-2 at 21.  Barnes contends that this affirmation by Prack represented a failure to remedy the constitutional violation which Barnes had suffered during his unconstitutional disciplinary hearing.  Compl. ¶ 46.

6

## II. Discussion

Barnes contends that his First Amendment rights were violated when Yarrow authored a false misbehavior report against him in retaliation.  Barnes contends that his Eighth Amendment rights were infringed upon when (1) defendants Derouche, Bowman, Winson, and St. Mary subjected him to excessive force; (2) defendants Rock, Uhler, Fischer, Cook, and Gokey failed to protect him; and (3) defendant Lordi was deliberately indifferent to his serious medical needs.  Lastly, Barnes contends that his Fourteenth Amendment rights were violated when he (1) received a false misbehavior report from defendant Yarrow and (2) failed to receive appropriate due process from defendant Stickney at his disciplinary hearing.  Defendants seek dismissal claiming that (1) Barnes' complaints against defendants Yaddow, Stickney, Matoon, and Caron are meritless and (2) the complaint fails to establish the personal involvement of defendants Fischer, Uhler, Rock, Lordi, or Prack.

### A. Legal Standard[4]

Rule 12(b)(6) authorizes dismissal of a complaint that states no actionable claim.  When considering a motion to dismiss, "a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant."

---

[4] Barnes attached approximately 120 pages of additional material to his complaint. Dkt. Nos. 1-1 & 1-2.  Consideration of a motion to dismiss "is limited to the facts asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference."  McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007).  As that information was attached and submitted with the complaint, it too has been considered in liberally reading and construing the claims within the complaint.  However, for ease and efficiency, citation will only be made to the first sets of documents included in the attachment, as identical copies were noted in subsequent pages.

Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994).  However, this "tenet . . . is

inapplicable to legal conclusions[; thus, t]hreadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 129 S.

Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007)

(holding that "entitlement to relief requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action . . . [as] courts are not bound to

accept as true a legal conclusion couched as a factual allegation.")).

   Accordingly, to defeat a motion to dismiss, a claim must include "facial plausibility . . .

that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556 (explaining

that the plausibility test "does not impose a probability requirement . . . it simply calls for

enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal

[conduct].")); see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (holding that, "[o]n

a motion to dismiss, courts require enough facts to state a claim to relief that is plausible . . .

.") (citations omitted).  Determining whether plausibility exists is "a content specific task that

requires the reviewing court to draw on its judicial experience and common sense."  Iqbal,

129 S. Ct. at 1950-51.

   When, as here, a party seeks judgment against a pro se litigant, a court must afford the

non-movant special solicitude.  See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471,

477 (2d Cir. 2006).  As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled
> to "special solicitude," . . . that a pro se litigant's submissions must be
> construed "liberally,". . . and that such submissions must be read to raise the
> strongest arguments that they 'suggest. . . . .   At the same time, our cases
> have also indicated that we cannot read into pro se submissions claims that
> are not "consistent" with the pro se litigant's allegations, . . or arguments that

the submissions themselves do not "suggest, . . ." that we should not "excuse frivolous or vexatious filings by <u>pro se</u> litigants" . . . and that <u>pro se</u> status "does not exempt a party from compliance with relevant rules of procedural and substantive law . . . ."

<u>Id.</u> (citations and footnote omitted); <u>see also</u> <u>Sealed Plaintiff v. Sealed Defendant #1</u>, 537 F.3d 185, 191-92 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se*, . . . a court is obliged to construe his pleadings liberally.'" (citations omitted)).

## B. Personal Involvement

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994) (quoting <u>Moffitt v. Town of Brookfield</u>, 950 F.2d 880, 885 (2d Cir. 1991)). Thus, supervisory officials may not be held liable merely because they held a position of authority. <u>Id.</u>; <u>Black v. Coughlin</u>, 76 F.3d 72, 74 (2d Cir. 1996). However, supervisory personnel may be considered "personally involved" if:

(1) [T]he defendant participated directly in the alleged constitutional violation;

(2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong;

(3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;

(4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or

(5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

<u>Colon v. Coughlin</u>, 58 F.3d 865, 873 (2d Cir. 1995) (citing <u>Williams v. Smith</u>, 781 F.2d 319,

323-24 (2d Cir. 1986)).[5]

## 1. Fischer

Barnes continuously claims that Commissioner Fischer was involved in arbitrary actions, created an environment of abuse and hostility, and failed to train and negligently managed his subordinates.  The gravamen of Barnes' complaints against this defendant is that he was in a position of power, thus always involved with anything occurring in conjunction with Barnes' incarceration.  However, attempts to establish personal involvement based upon the supervisory role these defendants occupied is inappropriate.  Wright, 21 F.3d at 501 (holding that a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement).

Barnes also contends, and has attached, numerous letters and grievances, some of which were specifically addressed to Fischer.  Dkt. No. 1-1 at 1, 53-55, ; Dkt. 1-2 at 39-41, 52-55.  Barnes contends that sending this correspondence, as well as filing affidavits and verified complaints in other state and federal actions (Dkt. No. 102 at 56-60), served as notification to Fischer of the alleged ongoing constitutional violations.  However, merely writing letters and grievances to a defendant is insufficient to establish notice and personal involvement.  Smart v. Goord, 441 F. Supp. 2d 631, 643 (S.D.N.Y. 2006) ("Commissioner . .

---

[5] Various courts in the Second Circuit have postulated how, if at all, the Iqbal decision affected the five Colon factors which were traditionally used to determine personal involvement.  See McCarroll v. Fed. Bureau of Prisons, No. 08-CV-1343 (DNH/GHL), 2010 WL 4609379, at *4 (N.D.N.Y. Sept. 30, 2010) (noting that although the Second Circuit has not yet addressed Iqbal's impact on the five Colon factors, several district courts have done so); Kleehammer v. Monore County, 743 F. Supp. 2d 175 (W.D.N.Y. 2010) (holding that "[o]nly the first and part of the third Colon categories pass Iqbal's muster . . . ."); D'Olimpio v. Crisafi, 718 F. Supp. 2d 340, 347 (S.D.N.Y. 2010) (disagreeing that Iqbal eliminated Colon's personal involvement standard).

. cannot be held liable on the sole basis that he did not act in response to letters of protest sent by [plaintiff] . . . .").  Similarly, receipt of a letter or grievance, without personally investigating or acting on the letter or grievance, is insufficient to establish personal involvement.  See, e.g., Rivera v. Fischer, 655 F. Supp. 2d 235, 238 (W.D.N.Y.2009) (citing cases); Boddie v. Morgenthau, 342 F. Supp. 2d 193, 203 (S.D.N.Y. 2004) ("While mere receipt of a letter from a prisoner is insufficient to establish individual liability . . . [p]ersonal involvement will be found . . . where a supervisory official receives and acts on a prisoner's grievance or otherwise reviews and responds to a prisoner's complaint.").

    The only correspondence which referenced any involvement by Fischer was a letter from third party Karen Bellamy which explained to Barnes that Fischer had forwarded Barnes' letters of complaint and grievances to her for investigation and response.  However, it is within the purview of a superior officer to delegate responsibility to others.  See Vega v. Artus, 610 F. Supp. 2d 185, 198 (N.D.N.Y.2009) (finding no personal involvement where "the only involvement of the supervisory official was to refer the inmate's complaint to the appropriate staff for investigation.") (citing Ortiz-Rodriguez v. N.Y. State Dep't of Corr. Servs., 491 F. Supp. 2d 342, 347 (W.D.N.Y. 2007)).  Moreover, conclusory allegations about negligent supervision and a failure to train are insufficient to establish personal involvement.  Therefore, defendants' motion on this ground should be granted.


## 2.  Uhler

    Barnes again contends defendant Uhler's personal involvement based upon the fact that Barnes authored over sixty-five grievances and sixteen lawsuits.  For the reasons stated above, filing complaints and lawsuits, without more, is insufficient to establish personal

involvement.  Moreover, for the reasons previously articulated, general and conclusory allegations of knowledge based upon a supervisory position are also insufficient to establish personal involvement.  As Barnes has proffered no plausible facts to establish that Uhler had knowledge, investigated, or otherwise participated in decision making, policy making or training regarding the alleged constitutional violations, defendants' motion on this ground should also be granted.

### 3.  Prack

Barnes' sole allegation against Prack is that Prack violated his constitutional rights by affirming the disciplinary disposition of a restricted diet handed down by Stickney.  However, the affirmation of an allegedly unconstitutional disciplinary hearing does appear to establish personal involvement.  See Thomas v. Calero, 824 F. Supp. 2d 488, 505-511 (S.D.N.Y. 2011) (discussing cases and concluding that affirming or modifying, as opposed to vacating and remedying, an allegedly constitutionally infirm disciplinary proceeding can satisfy various prongs of Colon and, regardless of Iqbal's impact on the Colon factors, results in a constitutional violation of which the defendant had knowledge, failed to remedy, and allowed to continue).  Accordingly, defendants' motion on this ground should be denied.

### 4.  Rock

Barnes contends that defendant Rock, like defendant Uhler, was notified of his various complaints through the filing of numerous grievances, affidavits, and lawsuits.  For the reasons stated above, such contentions are insufficient to establish personal involvement.

However, Barnes also alleges that he verbally spoke to Rock about the instances of abuse that he was experiencing and that Rock dismissed his complaints.

> It has been held that "an appropriate guiding principle" for determining personal responsibility is where a grievance alleges an "ongoing" constitutional violation, the supervisory official who reviews the grievance is "personally involved" if he is confronted with a situation that he can remedy directly.  If the official is confronted with a violation that has already occurred and is not ongoing, then the official will not be found personally responsible for failing to "remedy" a violation.

Harnett v. Barr, 538 F. Supp. 2d 511, 524 (N.D.N.Y. 2008) (internal citations omitted).

Barnes failed to indicate when this conversation occurred.  Thus, Barnes has failed to establish that the conversation served as notice prior to the alleged ongoing constitutional violation, specifically the excessive use of force on October 9, 2010.  Without alleging that fact, one can not plausibly infer that Barnes' discussion with Rock, to which Rock participated and responded by dismissing Barnes, provided Rock with notice.  If the conversation occurred subsequent to the use of force, it represented notice of a "violation . . . that ha[d] already occurred and [wa]s not ongoing."  Id.  Thus, the conversation was insufficient to allege personal involvement and defendants' motion should be granted on this ground.

### 5.  Lordi

Barnes contends that Lordi was deliberately indifferent to Barnes' medical needs and falsified his medical records.  These claims allege direct personal involvement in alleged constitutional violations.  Accordingly, defendants' motion on this ground is denied.

13

## C. First Amendment

### 1. Retaliation

Barnes contends that Yarrow retaliated against him by filing a false misbehavior report against him on April 23, 2011, in retaliation for Barnes' prior actions of filing grievances. Liberally construing the complaint, it appears Barnes may also allege a claim of retaliation against Prack as well.  To state an actionable claim for retaliation, a plaintiff must first allege that the plaintiff's conduct was constitutionally protected and that this protected conduct was a substantial factor that caused the adverse action against plaintiff.  Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996).  "Types of circumstantial evidence that can show a causal connection between the protected conduct and the alleged retaliation include temporal proximity, prior good discipline, finding of not guilty at the disciplinary hearing, and statements by defendants as to their motives."  Barclay v. New York, 477 F. Supp. 2d 546, 588 (N.D.N.Y. 2007) (citations omitted).

> There is no bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship, so courts judge the permissible inferences that can be drawn from temporal proximity in the context of particular cases. However, courts have found that six and eight month gaps between the protected conduct and adverse action were sufficient, while in other circumstances three months was considered too long.

Burton v. Lynch, 664 F. Supp. 2d 349, 367 (S.D.N.Y. 2009) (internal quotation marks and citations omitted).

However, courts must view retaliation claims with care and skepticism to avoid judicial intrusion into matters of prison administration.  Jackson v. Onondaga County, 549 F. Supp. 2d 204, 214-15 (N.D.N.Y. 2008).  Therefore, conclusory allegations alone are insufficient.

Id. at 214 (citing Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983) (explaining that "claim[s] supported by specific and detailed factual allegations . . . ought usually be pursued with full discovery.")).

Barnes has failed to allege a plausible retaliation claim with respect to either defendant. In order "[t]o show retaliation [in these circumstances, Barnes] was required to present evidence that his constitutionally protected conduct in filing past grievances was a substantial or motivating factor for a prison official's adverse action." Cole v. Fischer, 416 Fed. Appx. 111, 113 (2d Cir. 2011) (citing Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003). First, the allegations against these defendants are conclusory. Second, Barnes does not provide information about when he filed grievances, who he filed them against, or how long after the grievances were filed that the alleged retaliation occurred. Accordingly, even reading the facts in the light most favorable to Barnes he has failed to demonstrate that filing grievances was a substantial factor in the alleged retaliation. Accordingly, defendants' motion on this ground is granted.

### 2. False Misbehavior Reports

In this case, Barnes contends that Yaddow filed a false misbehavior reports against him on April 23, 2011. An inmate has a right not to be deprived of a liberty interest without due process. However, a "prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986)). "There must be more, such as retaliation against the prisoner for exercising a constitutional right." Boddie v. Schnieder, 105 F .3d 857, 862 (2d Cir.1997) (citing Franco v. Kelly, 854 F.2d 584, 588-90

(2d Cir. 1988))_.

In this case, Barnes contends that he received false misbehavior reports for flooding his cell.  However, for the reasons discussed supra, Barnes has failed to allege a plausible retaliation claim against Yaddow.  Because Barnes has failed to state a claim for retaliation, any allegations related to the alleged filing of false misbehavior reports is also inappropriate.

### D. Due Process[6]

To the extent Barnes contends defendant Stickney and Uhler denied him due process during his disciplinary hearing and subsequent appeal, such contentions are meritless.  As a threshold matter, an inmate asserting a violation of his or her right to due process must establish the existence of a protected interest in life, liberty, or property. See Perry v. McDonald, 280 F.3d 159, 173 (2d Cir. 2001). To establish a protected liberty interest, a prisoner must satisfy the standard set forth in Sandin v. Conner, 515 U.S. 472, 483-84 (1995). This standard requires a prisoner to establish that the deprivation was atypical and significant in relation to ordinary prison life.  Id. at 484; Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir.1999); Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir.1996).

Barnes contends that the issuance of a seven-day restricted diet was an atypical and significant hardship because it resulted in substantial weight loss, pain, suffering, mental

---

[6] Defendants also contend that, pursuant to the documents Barnes attached to the complaint, he was not denied procedural due process because his claims about the information and witnesses he was denied were conclusory, Barnes' witness refused to testify, and Barnes was uncooperative at his hearing which resulted in his ultimate ejection from the proceedings.  Defs. Memorandum of Law (Dkt. No. 28-1) at 6.  However, given this recommendation it is unnecessary to reach the merits of the procedural aspect of his due process claim.

anguish and anxiety.  The Second Circuit, and this Court specifically, have found that a seven day restricted diet is insufficient to establish an atypical and significant hardship. See McEachin v. McGuinnis, 357 F.3d 197, 199-201 (2d Cir. 2004) (granting dismissal of the inmate's due process claim because there was no atypical and significant hardship suffered by the inmate as a consequence of the disciplinary disposition of a week's long restricted diet); Beckford v. Portuondo, 151 F. Supp. 2d 204, 219 (N.D.N.Y. 2001) (holding that "[i]n light of the minimal amount of time[, specifically the seven days] that [the inmate's] dietary . . . restrictions were put in place, . . . as a matter of law, . . . his confinement was not sufficiently atypical to implicate a protected liberty interest.").  Therefore, Barnes has failed to establish a protected liberty interest and defendants' motion should be granted on this ground.


### E.  Eighth Amendment

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment."  U.S. Const. amend. VIII.  Eighth Amendment obligations include the duty to protect prisoners from other known harms.  Farmer v. Brennan, 511 U.S. 825, 829 (1970); Matthews v. Armitage, 36 F. Supp. 2d 121, 124 (N.D.N.Y. 1999) (citations omitted).  It also includes the provision of medical care.  Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994).  "'Because society does not expect that prisoners will have unqualified access to healthcare,' a prisoner must first make [a] threshold showing of serious illness or injury" to state a cognizable claim.  Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003)(quoting Hudson, 503 U.S. at 9).  Because there is no distinct litmus test, a serious medical condition is determined by factors such as "(1) whether a reasonable doctor or patient would perceive

17

the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain."   Brock v. Wright, 315 F.3d 158, 162-63 (2d Cir. 2003)(citing Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998)).  The severity of the denial of care should also be judged within the context of the surrounding facts and circumstances of the case.  Smith, 316 F.3d at 185.

Deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs."  Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998).  Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."  Estelle v. Gamble, 429 U.S. 97, 104 (1976).  "Mere disagreement over proper treatment does not create a constitutional claim" as long as the treatment was adequate.  Chance, 143 F.3d at 703.  Thus, "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists . . .  are not adequate grounds for a section 1983 claim."  Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001).

Barnes has failed to establish a plausible claim as to either prong of the Eighth Amendment.  Barnes' does not indicate what serious medical need he was suffering from. He also fails to indicate any facts establishing a plausible claim of deliberate indifference, instead relying on conclusory allegations which mimic the words of the statute.  Without allegations regarding the alleged injuries, the date of the injuries, the medical care required, the medical care deprived, or the allegations of which records and symptoms were fabricated, an Eighth Amendment claim cannot stand.  Accordingly, defendants' motion

18

should be granted on this ground.

### F. Conspiracy[7]

In order to support a claim for conspiracy pursuant to § 1983, there must be "(1) an agreement . . . ; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Ciambriello v. County of Nassau, 292 F.3d 307, 324-25 (2d Cir. 2002); Cusamano v. Sobek, 604 F. Supp. 2d 416, 468 (N.D.N.Y. 2009). An agreement must be proven with specificity as bare allegations of a conspiracy supported only by allegations of conduct easily explained as individual action is insufficient. See Iqbal v. Hasty, 490 F.3d 143,177 (2d Cir. 2007); see also Gyadu v. Hartford Ins. Co., 197 F.3d 590, 591 (2d Cir.1999). Thus, plaintiffs must "make an effort to provide some details of time and place and the alleged effects of the conspiracy . . . [including] facts to demonstrate that the defendants entered into an agreement, express or tacit, to achieve the unlawful end." Warren v. Fischl, 33 F. Supp. 2d 171, 177 (E.D.N.Y. 1999) (citations omitted). While exact specifics are not required, "the pleadings must present facts tending to show agreement and concerted action." Anilao v. Spota, 774 F. Supp. 2d 457, 512-13 (E.D.N.Y. 2011) (citations omitted). Conclusory, vague, and general allegations are insufficient to support a conspiracy claim. Ciambriello, 292 F.3d at 325.

Barnes contends that (1) he was denied medical treatment and had his records falsified by Lordi due to Lordi's participation in a conspiracy against Barnes and (2) defendants

---

[7] Defendants also assert that any conspiracy claims are effectively barred by the intracorporate conspiracy doctrine. However, because it is recommended herein that defendants' motions as to the conspiracy claim be granted on other grounds, their motion based on the intracorporate conspiracy doctrine need not be addressed.

Caron and Matoon produced manipulated video tapes as a result of the conspiracy they were engaged in with other named defendants that alleged used excessive force on October 9, 2010.  However, none of these alleged conspiracy claims is sufficient to withstand the current motion.  All of these claims are conclusory and fail to establish how, when, or why defendants colluded and formed these alleged schemes.  While specifics are unnecessary, Barnes fails to provide any plausible information which would lend credence to his claims of an explicit or implicit agreement between any or all of these defendants.

Accordingly, defendants' motion on this ground is granted.


### III. Motion to Amend

Rule 15(a) provides that a court should grant leave to amend "freely . . . when justice so requires."  When exercising its discretion, a court must examine whether there has been undue delay, bad faith, or dilatory motive on the part of the moving party.  Evans v. Syracuse City School District, 704 F.2d 44, 46 (2d Cir. 1983) (citing Foman, 371 U.S. at 182).  The court must also examine whether there will be prejudice to the opposing party.  See, e.g., Ansam Associates Inc. v. Cola Petroleum, Ltd., 760 F.2d 442, 446 (2d Cir.1985) (permitting proposed amendment would be especially prejudicial once discovery has been completed and a summary judgment motion filed).  Finally, where it appears that granting leave to amend is unlikely to be productive or the amendment is futile, it is not an abuse of discretion to deny leave to amend.  Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993) (citations omitted).

Barnes seeks to add a new cause of action to his claim as well as clarify his previously asserted causes of action.  For the reasons articulated below the motion to amend should

be granted in part and denied in part.

## A.  New Causes of Action

### 1.  Conditions of Confinement

Barnes seeks to add a new cause of action, claiming an Eighth Amendment violation regarding his conditions of confinement.  Specifically, Barnes contends that on June 7, 2010, upon arrival, he was deprived of toilet paper, pen, paper, and envelopes by defendants Gokey and Winston.  Proposed Am. Compl. (Dkt. No. 37-1) ¶ 17.  However, allowing this amendment would be futile.

As with other Eighth Amendment claims, a "plaintiff must satisfy both an objective . . . and subjective test."  Jolly v. Coughlin, 76 F.3d 468,  480 (2d Cir. 1996) (citations omitted). Thus, "a prisoner may prevail only where he proves both an objective element – that the prison officials' transgression was sufficiently serious– and a subjective element – that the officials acted, or omitted to act, with a sufficiently culpable state of mind . . . ."  Phelps v. Kapnolas, 308 F.3d 180, 185 (2d Cir. 2002) (internal quotation marks and citations omitted).

The objective prong can be satisfied by

> conditions of confinement . . . [which] in combination [constitute an Eighth Amendment violation] when each would not do so alone . . . [such as] when the conditions have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise – for example, a low cell temperature at night combined with a failure to issue blankets.

Davidson v. Murray, 371 F. Supp. 2d 361, 370 (W.D.N.Y. 2005) (citations omitted). However, "[n]othing so amorphous as overall conditions can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists."  Id. (citing

Wilson v. Seiter, 501 U.S. 294, 304-05 (1991)).  The subjective prong requires "a prison official [to] have a sufficiently culpable state of mind . . ., of deliberate indifference to inmate health or safety"  Farmer, 511 U.S. at 834 (citations omitted).

Barnes has failed to allege facts which plausibly satisfy either prong of this analysis. Barnes has not established how long the deprivation occurred and in which single, identifiable, human need the deprivation resulted.  Barnes' current allegations are nothing more than a complaint against the overall conditions to which he was subjected upon arrival.  This is insufficient to state an Eighth Amendment claim.  Accordingly, Barnes' motion is denied on this ground.

### 2.  Equal Protection & Due Process

Instead of again advancing the conspiracy claim Barnes initially pled against defendants Matoon and Caron in his complaint, Barnes now contends that their actions in handling and maintaining the videotapes were against his equal protection and due process rights. Proposed Am. Compl. ¶ 43.  However, Barnes fails to include any facts which would indicate how these rights were infringed upon.  Because more than naked facts "and a formulaic recitation of the elements of a cause of action" are required to state a claim, allowing amendment of Barnes' complaint with respect to these two causes of action would be futile.  Bell Atlantic v. Twobly, 550 U.S. 555 (2007) (citations omitted).

### 3.  Retaliation

Liberally construing Barnes' proposed amended complaint, it also appears that he is

attempting to allege a retaliation claim with respect to defendants Matoon and Caron. Proposed Am. Compl. ¶ 43.  Specifically, it appears that Barnes is alleging that the videotapes were maintained in a manner to promote bias and prejudice towards Barnes.  Id. Amending the complaint to include such a claim would be futile because Barnes has failed to establish any constitutionally protected activity in which he was previously engaged or any sort of causal connection between that activity and defendants' actions in maintaining videotapes in the facility.  Barnes' amended allegations indicate that he filed a grievance against these defendants (Id.), however, the grievance was filed subsequent to the alleged adverse action thus could not serve as the impetus for the alleged adverse action. Accordingly, Barnes motion is denied on this ground.

### B.  Previously Dismissed Defendants and Causes of Action

#### 1. Fischer, Uhler & Rock

    Barnes attached additional documents, namely more grievances and letters of complaint authored to Fischer and Uhler.  For the reasons stated above, filing of complaints, whether in grievances, letters, or law suits, is insufficient to establish personal involvement. Therefore, despite the additional paperwork attached to the proposed amended complaint, amendment to reinstate these two defendants would be futile.  Moreover, there were two letters from third party LeClaire which also indicated that Fischer delegated responsibility to LeClaire to investigate and respond to Barnes' complaints.  Dkt. No. 37-3 at 58-59.  Again, for the same reasons previously stated, this is insufficient to establish personal involvement. Barnes asserted no additional facts against Rock, or the verbal notification that he provided

them.  Accordingly, for the reasons previously discussed, amendment would be futile and Barnes' motion is denied on this ground.

### 2.  Prack & Lordi

Defendants' reassert the same arguments in opposition to the motion to amend, claiming futility, as were asserted in the motion to dismiss contending defendants' lack of personal involvement.  For the same reasons stated above, these arguments are dismissed.  However, because the alleged constitutional violation in which defendant Prack was supposedly engaged has been dismissed, allowing an amended complaint with respect to these contentions, as discussed infra, would be futile.  Accordingly, Barnes' motion to amend is granted to the extent that the proposed amended complaint will contain substantive claims against defendant Lordi and will omit those claims against defendant Prack.

### 3.  Retaliation Claim

Barnes' previous retaliation claim against Yarrow was dismissed for its conclusory nature.  In his proposed amended complaint, Barnes alleges that the day prior to the issuance of his allegedly false misbehavior report, Yarrow was subject to an investigation based on a grievance which Barnes filed.  Proposed Am. Compl. ¶ 37.  In response to being the target of an investigation, Yarrow told Barnes that "he would get him," and the following day, issued the alleged false misbehavior report.  Id.

In order to allege a retaliation claim, a plaintiff must first allege that the plaintiff's conduct

was constitutionally protected and that this protected conduct was a substantial factor that caused the adverse action against plaintiff.  Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996).  If the plaintiff establishes these elements, the burden shifts to the defendants to show by a preponderance of the evidence that they would have taken the same action against the plaintiff absent his exercising of the protected conduct.  Graham v. Henderson, 89 F.3d 75, 79 (2d Cir.1996).

Filing grievances is an action protected by the First Amendment, thus, Barnes has established engagement in constitutionally protected conduct.  Barnes has also established an adverse action.  See Tafari v. McCarthy, 714 F. Supp. 2d 317, 374 (N.D.N.Y. 2010) (holding that filing a false misbehavior report constitutes an adverse action) (citations omitted).  However, it appears that even construing the facts in the light most favorable to Barnes, Yarrow would have still undertaken the same action of filing the misbehavior report the following day for Barnes' actions of flooding his cell with water.  While Barnes proffers conclusory statements that the misbehavior report is false, he fails to deny that he engaged in the actions for which he was charged.  Moreover, documents attached to the initial complaint indicate that there was video evidence which corroborated Yarrow's recitation of the events.[8]  Accordingly, allowing amendment of the complaint to restate this dismissed claim would be futile as defendants have shown, by a preponderance of the evidence, that the same actions would have been undertaken.  Barnes' motion on this ground is denied on

---

[8]  Also considered, though not serving as the impetus for the present decision, was a transcript of the disciplinary hearing whereupon Barnes refused to enter a plea, yet did not ever deny the allegations that he flooded his cell. Dkt. No. 37-3 at 70-80.  The transcript also details the contents of video evidence, which explicitly shows water pooling in Barnes' cell. Id. at 78.

this ground.

### 4. Due Process

Barnes' proffered allegations in his proposed amended complaint regarding his disciplinary hearing, appeal, and affirmation are substantially the same claims as those previously asserted and dismissed. Accordingly, for the reasons previously articulated, specifically that Barnes has failed to establish an atypical and significant hardship[9], amendment would be futile. Barnes' motion on this ground is denied.

### 5. Eighth Amendment[10]

In Barnes' proposed amended complaint he expands his allegations against defendant Lordi and asserts that after the use of force on October 9, 2010, she refused to provide him with medical treatment for his injuries and to properly document them in her medical reports. Proposed Am. Compl. ¶ 36. Specifically Barnes contends that he was suffering and in pain and instead of providing treatment, Lordi lied, falsifying his health records to

---

[9] Defendants' also contend that based upon Barnes' attached medical records, there is no evidence that he suffered any atypical and significant hardship from his week-long restricted diet. Defs. Memorandum of Law (Dkt. No. 40) at 5. Medical records indicate that, despite Barnes' complaints of stomach illness and skin irritation, his skin was smooth and without redness (Dkt. No. 37-3 at 89), he had "no evident medical problems related to diet," (Id. at 85), he was alert, oriented, cooperative and appropriate (Id.), and, despite a five pound weight loss, his weight and vital signs were stable and all within normal limits (Id. at 84-85).

[10] Defendants' did not make a motion to dismiss, or oppose Barnes' motion to amend, with respect to the alleged use of force which occurred on October 9, 2010. Accordingly, with respect to expanding upon and clarifying such claims, the motion to amend is granted.

inaccurately reflect Barnes' physical condition.  Id.  Liberally construing Barnes' complaint, this is sufficient to establish an Eighth Amendment violation.  Allegations of severe pain have been deemed sufficient to establish a serious medical need.  Sereika v. Patel, 411 F. Supp. 2d 397, 406 (S.D.N.Y. 2006) (allegations of "severe pain . . . [and] reduced mobility . . ." in the shoulder are sufficient to raise a material issue of fact as to a serious medical need); Benjamin v. Galeno, 415 F. Supp. 2d 254, 259 (S.D.N.Y. 2005) (explaining that a court "cannot ignore the fact that [a party] says that he experienced extreme pain . . . [t]herefore when a pro se plaintiff alleges . . . extreme pain during the period he says defendant's failed to treat his injury, he has effectively raised a disputed . . . albeit . . . tenuous [issue] as to . . . a serious medical condition.").  Furthermore, crediting Barnes' allegations that Lordi attended to him, saw his serious injuries, failed to treat them, and then also falsified records to presumably interfere with subsequent treatment is sufficient to state a plausible claim for deliberate indifference.  Accordingly, Barnes' motion on this ground is granted.

## V. Conclusion

For the reasons stated above, it is hereby:

1. **RECOMMENDED** that defendants' motions to dismiss (Dkt. Nos. 28, 35) be:

    A. **DENIED** as to the failure to allege the personal involvement of defendants Prack and Lordi; and

    B. **GRANTED** as to all other defendants and claims;

2. **ORDERED** that Barnes' motion for leave to file an amended complaint (Dkt. No.

27

37) be:

    A.  **GRANTED** as to ¶¶ 21-28, 36 and to the extent that it pleads an Eighth Amendment (1) use of force and failure to protect claim against defendants Gokey, Derouche, Bowman, Winson, St. Mary, and Cook and (2) deliberate indifference claim against defendant Lordi;

    B.  **DENIED** as to all other proposed claims and defendants.  Plaintiff is advised that the amended complaint as accepted is now the operative pleading and shall replace in toto any prior pleadings;

    C.  The Clerk of the Court is ordered to docket the proposed amended complaint (Dkt. No. 37-1) as the amended complaint; and

    D.  It is further ordered that a response to Plaintiff's amended complaint be filed by the defendants or their counsel as provided for in the Federal Rules of Civil Procedure.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated:  September 7, 2012
       Albany, New York

                             Christian F. Hummel
                             U.S. Magistrate Judge